**MIRO DRILLING CO., Inc., Appellant,**

**v.**

**R. E. BIVINS and Gilbert Fouts, Appellees.**

Court of Appeals of Kentucky.

Sept. 27, 1968.

William E. Gary, III, Sandidge, Holbrook, Craig & Hager, Owensboro, for appellant.

Rhodes Bratcher, Owensboro, for appellees.

EDWARD P. HILL, Judge.

Appellees sued for breach of contract requiring appellant to drill four exploratory oil wells on an 1100-acre tract located in Webster County. The action resulted in a jury's verdict for $3,000 in favor of appellees. Miro Drilling Co. appeals.

Appellee Bivins, the operator of a restaurant, met with Mike Cheeseman, vice-president of Miro Drilling Co., at the place of business of Bivins on September 15, 1965, at which time a geologist, Brandon Nuttall of Madisonville, was present. The following four contracts were entered into on that date: (1) a drilling contract; (2) an agreement; (3) an operating agreement; and (4) a menu agreement (written on the back of a restaurant menu).

It was provided in these various agreements, which may and must be considered together, that Miro Drilling Co. would commence the first well on or before the 26th of October 1965 and that it would drill three additional wells. One of the contracts also required appellee Bivins to deposit in the Kentucky Bank & Trust Company of Madisonville the sum of $4,000 to be applied on the cost of drilling. Under another agreement Bivins agreed and undertook to furnish Miro with a certificate of title.

In another part of one of the contracts, Miro agreed to purchase a one-half interest in the leasehold estate and was required to carry a one-half interest in the project, which obligated Miro to stand one-half the cost of the development.

Miro did not commence the drilling of a well on or before October 26, 1965, or at all. Whereupon Bivins filed this suit for damages alleging breach of contract. Miro countered with the argument that Bivins breached his contract in two respects: (1) that Bivins failed to furnish a "written" certificate of title; and (2) that Bivins did not deposit in the bank designated the sum of $4,000, which Bivins agreed to do as a good faith advancement upon the cost of drilling. Other arguments are presented in the briefs; but inasmuch as we have decided that Bivins first violated his contractual obligations, it will not be necessary to discuss such other arguments.

The "agreement," the second instrument listed above, provided among other things that: "Second Party (Bivins) agrees to furnish a title opinion from an attorney prior to the commencement of the well." We quote the testimony of Bivins relative to his agreement to "furnish a title opinion":

"Q. Did you ever receive a written title opinion?

"A. No sir, I did not.

"Q. Did you ever furnish Miro Drilling Co. with a title opinion?

"A. No sir, I did not.

"Q. Do you know, did Mr. Rich ever furnish Miro Drilling Co. with a written title opinion?

"A. He had one for them. Whether they received it or not I do not know.

"Q. Now you say he had one for them?

"A. Yes, sir, well, I—he said that he did, I didn't see it. I paid him for it. That's all I know.

Bivins attorney, Joel Rich, testified as follows:

"Q. Mr. Rich did you receive a phone call from Mr. Mike Cheeseman?

"A. Yes.

"Q. And what did he call you about?

"A. He called me to see if I made a title opinion on this prop—particular piece of property.

"Q. And what did you tell him?

"A. I told him that I'd—that—just what I have told you, that I hadn't —that I didn't certify the title to this piece of property and that actually I—I hadn't made any written title opinion. That what I had done as far as examining the title was not enough for me to give a certification of title."

On October 20, 1965, Cheeseman, representing Miro, called Bivins from somewhere in Texas relative to the title opinion, and Bivins referred Cheeseman to Bivins' attorney, Mr. Rich.

We have no difficulty in concluding that Bivins utterly failed to furnish certification of title as he agreed. Bivins argues on this appeal that his contract did not require a "written opinion" as to title. But he furnished none, written or otherwise. Bivins and Cheeseman were strangers prior to their negotiations preliminary to this transaction. Cheeseman was representing a corporation. There is every reason to assume, and we think no reason to doubt, that a written certification was contemplated.

The first breach of his contract by Bivins above noted was sufficient to justify Miro in refusing to commence the first well. Furthermore, Bivins did not comply with his written agreement to deposit $4,000 with "a bank" as good faith or advancement on Bivins' part of the cost of drilling. Bivins did make out a check for this amount and gave it to the geologist, Nuttall, with instructions to hold it for he didn't want the people at the bank to know his business. This action fell short of his obligation to place this amount of money "in escrow" in "a bank."

Appellee Bivins emphasizes Miro's admitted efforts to sell in Texas part of his interest in the lease. Miro admitted efforts to sell and its inability to do so. But it makes no difference how many other reasons Miro had for not commencing the well if Bivins breached his contract first.

The judgment is reversed with direction to dismiss the complaint.

All concur.